## NELIS v COMMUNITY TRACTION CO

Ohio Appeals, 6th Dist, Lucas Co

Decided Dec 9, 1935

Meck & Dienst, Toledo, and Wm. H. McLellan, Jr., Toledo, for plaintiff in error.

Tracy, Chapman & Welles, Toledo, for defendant in error.

### OPINION

By LLOYD, J.

Leontine Nelis, administratrix, seeks to reverse a judgment of the Court of Common Pleas entered on a directed verdict in favor of the defendant in error. The alleged errors are the direction of the verdict and its corollary, the overruling of a motion for a new trial. The administratrix sought to recover a judgment of $25,000 for the death of Desire Nelis, alleged to have been proximately caused by negligence of the traction company in the operation of one of its street cars. At about 5:20 A. M., Monday, March 6, 1933, the decedent's body, while lying upon the easterly rail of the northbound Summit Street track of the company in Toledo, was run over by one of its cars, resulting in the death of Nelis. At the place of the occurrence are two tracks, one northbound, the other southbound, located on the unpaved easterly side of Summit Street, adjacent to and paralleling Riverside Park. The space between the ties on which the rails lie is filled with cinders or crushed stone, level with the ties but not with the top of the rails.

The pleaded allegations of negligence relied upon in the brief of the administratrix are that the operator of the street car after he saw, or in the exercise of ordinary care should have seen, Nelis "lying on the rail of the track * * * failed to bring said street car to a stop and avoid striking said decedent," and that he failed to keep the street car under control "in that he failed to apply the brakes * * * and avoid striking said decedent." How or why the decedent came to be upon the track, or what his condition was, the evidence does not disclose. Nelis lived in the vicinity of the park and had left the home of a Mr. Brooks at about ten o'clock Sunday evening, where he had been visiting for about two hours. His body was lying prone and motionless across the rail of the track. It is assumed that he was alive when struck by the car because of the profuse flow of blood from the body. The only witness to the occurrence was the motorman of the street car, whose undisputed testimony discloses that the car equipment was in "perfect condition"; that the street car was the first car to pass over that route that morning; that it was still dark; that he was proceeding about 30 miles an hour and when 15 to 18 feet therefrom saw what resembled a bundle like a burlap sack lying across the rail; that he then cut out the power and applied the brakes, reducing the speed of the car to 25 miles an hour; that when about 7 or 8 feet therefrom he saw that the object was a man; that he then immediately released the sand upon the track and applied the emergency brake, the car proceeding thereafter from 70 to 80 feet—"nearly 80." No evidence was offered tending to prove that the car could have been stopped within a shorter distance. There is no evidence that the motorman, under any circumstances, could have seen Nelis more than 15 to 18 feet ahead of the street car, nor is there any evidence tending to show that had he then done all that he

thereafter did, and which was all that he could do, the injury and death of Nelis would have been avoided.

Incidentally, it may be said that the evidence disclosed that there was a fender on the front of the street car, the purpose of which was to lift from the tracks a person lying or standing thereon, as was Nelis, and thus prevent serious injuries to him; and, although not pleaded, it is contended that its failure to thus protect Nelis should be considered as raising a presumption of negligence. There is no evidence that this fender was in any respect defective or that it had been improperly attached to the car or that it did not operate in the instant case in the same manner as in other like exigencies. As we view it, the mere fact of its failure to effect its intended purpose would not of itself presume negligence.

It is claimed also that the opening statement of counsel for the traction company contained admissions which should be considered in determining the propriety of the directed verdict and consequent judgment. This opening statement, read as a whole, is no more than an outline of what it was claimed the evidence would show, and can not serve as a substitute therefor.

The motorman was not required to assume that there was an object on the track until he saw it, and there is no evidence in the record disclosing a failure to exercise ordinary care either before or after he observed it.

The judgment is affirmed.

Judgment affirmed.

OVERMYER and CARPENTER, JJ, concur.